OPINION
Defendant-appellant Cezar D. Stewart appeals the May 1, 2002 Judgment Entry of the Stark County Court of Common Pleas which found him guilty of murder, felonious assault, and tampering with evidence, and sentenced him accordingly. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
This case arises out of the stabbing death of Johnny Drake. Drake lived in an apartment at 1225 18th Street NW, in Canton, Ohio. His girlfriend, Marsha Jackson, lived there with him, on and off. On January 29, 2000, Jackson went to Drake's apartment. When she arrived, she found Drake, another man, and another woman, all engaged in sexual activity.
Jackson left the apartment and telephoned her friend, Dawn Smith. Smith agreed to help Jackson get her things from the apartment. Jackson then went to appellant's house. Appellant, who is Jackson's cousin, agreed to accompany Jackson to the apartment and assist in retrieving Jackson's personal belongings. Appellant drove to the apartment in a van with Jackson, Jackson's Aunt Bunch, and Bunch's thirteen month old infant. This group met Smith outside of the apartment.
Smith, Jackson, and appellant walked up to the apartment. Drake opened the door and Jackson entered, followed by appellant and Smith. Jackson was extremely upset, and instantly became loud and belligerent. She swore and tossed things around the room. She ordered the man and the woman who had been participating in sexual activity with Drake to leave the apartment. The woman, Patricia Ball, and the man refused to leave. Appellant then asked the two to leave and they left.
At this point, each of the witnesses gives a slightly different version of the events. Patricia Ball, a prostitute by trade, testified about her sexual activities with Drake and the other man earlier that evening. She admitted she had smoked cocaine, drank beer, and engaged in sexual activities with Drake and his friend earlier in the evening. Ball also testified appellant threatened every one there, and told Drake "let her [Jackson] go ahead and get her stuff or there is going to be some cutting."[1]
Appellant testified he asked Drake to leave the apartment so they could collect Jackson's belongings. Appellant testified he told Drake: "I am not here for arguing, just to get her stuff."[2] Drake refused to leave. Appellant then asked Drake to step aside so they could collect Jackson's belongings. A verbal altercation then ensued between Drake, Jackson, and appellant. When the argument between Drake and appellant became heated, Jackson told both men to calm down. According to appellant, when he pushed Jackson away, he hit the light switch and the lights went out.
Smith agreed with Ball in her testimony appellant yelled at Ball and the other man. Smith also testified appellant pushed Jackson aside when she attempted to calm the two men down. Smith turned the lights back on. When she turned around, she saw appellant holding a knife in his right hand, down at his side. Appellant ordered Drake not to go for anything but Smith testified Drake picked up a beer can. Smith and Jackson then locked themselves in the bathroom.
Smith could hear the men scuffling and bumping into walls. She left the bathroom and saw appellant and Drake in the kitchen. She saw blood coming down Drake's forehead and she could see Drake had been backed into a corner by appellant. Smith did not see the knife. At that point Smith left the residence and went immediately to her car.Appellant had a different view of the altercation. Appellant testified when the light came back on, Drake had a chair lifted bringing it up to a position to swing it at appellant. In order to defend himself, appellant rushed Drake, grabbed him and knocked the chair from him. Drake was stronger than appellant and appellant fell to the floor. The two wrestled on the floor and out into the hallway. As they stepped back from one another, Drake noticed appellant had a knife on the belt of his pants. Drake told appellant to put it down, and "lets fight like men."[3] Appellant testified he told Drake he did not want to fight. However, Drake kept moving toward him. Appellant decided to pull the knife out and strike appellant in the head with the butt of the knife, thinking this would slow Drake down.
Appellant testified Drake continued to come toward him as appellant backed up. Appellant testified he ended up with his back against the wall or the corner in the kitchen. All the while, appellant and Drake were scuffling, with Drake trying to get the knife away from appellant. Appellant testified Drake continually said "lets fight like men," and "I'm going to kick your tail."[4] The two men turned, and appellant had his back against the counter with Drake in front of him while both men continued to struggle over the knife. Drake was cut and stabbed during this struggle. However, appellant did not realize Drake had been cut until Drake stopped fighting, and backed up and said "I'm bleeding."[5]
Drake backed up and appellant dropped the knife and rushed over to him. Appellant testified he yelled for the women to come and help. Appellant then got a towel and wrapped it around Drake instructing Jackson to hold it. Appellant then went to the van and brought up Bunch for help.
Smith testified shortly after she left the apartment, appellant jumped into the passenger side of her vehicle and ordered her to drive away because the police were coming. Smith complied. Appellant told Smith Drake was dead. In the process of fleeing, appellant discarded his shirt and the knife. Appellant testified he was scared and wanted to leave. Smith took appellant to his apartment and then went home to tell her husband what had happened.
Jackson placed a 911 call from a Dairy Mart store a few blocks away. The police arrived at Drake's apartment at 2:20 a.m. At that time, Officer Steven Swank of the Canton Police Department found Drake lying in a pool of blood in the kitchen with Jackson applying pressure to a leg wound. Paramedics arrived and took Drake to the Mercy Medical Center, but he had no heartbeat, blood pressure, or reflexes. Medical personal were briefly able to revive Drake. He had knife wounds to his abdomen and upper leg. The surgical staff performed surgery on his upper leg to stop the bleeding, but Drake had lost to much blood too fast. Drake died at 7:30 p.m. that evening.
Sergeant Boudreaux arrived at the scene and told appellant's family the police were looking for him. At approximately 6:00 a.m., appellant and Bunch called the police from Bunch's residence. Bunch told the police appellant was there and wished to turn himself in. Sgt. Boudreaux and Sgt. James Williams went to the residence, arrested appellant, and read him Miranda rights. Appellant also signed a waiver of the Miranda rights and gave a taped statement at police headquarters. The taped statement was played for the jury at trial. Appellant did not resist arrest, and provided information to the police about the location of his clothing as well as the location of the knife. Appellant expressed remorse over the incident from the time he met with police.
On February 4, 2000, the Stark County Grand Jury indicted appellant with one count of felonious assault, in violation of R.C. 2903.11, a felony of the second degree; one count of murder, in violation of R.C.2903.02; and one count of tampering with evidence, in violation of R.C.2921.12, a felony of the third degree.
At his February 11, 2000 arraignment, appellant plead not guilty to the charges. The matter proceeded to a jury trial on April 20, 2000. After hearing the evidence and deliberating, the jury found appellant not guilty of the crime of murder as charged in the indictment, but guilty of the lesser included offense of involuntary manslaughter, a violation of R.C. 2903.04, a felony of the third degree. The jury also found appellant guilty of felonious assault and tampering with evidence. The trial court conducted a sentencing hearing, at which time the trial court merged the involuntary manslaughter and felonious assault charges.
In a May 1, 2001 Judgment Entry, the trial court sentenced appellant to a determinate five year prison term for involuntary manslaughter to be served concurrently with a determinate five year prison term for tampering with evidence.
It is from this judgment entry appellant prosecutes his appeal, assigning the following errors for our review:
 I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT BY DENYING THE DEFENSE MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29(A) AT THE CLOSE F THE STATE'S EVIDENCE AND AGAIN AT THE CLOSE OF ALL THE EVIDENCE, IN VIOLATION OF THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION WHERE THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION FOR MURDER, FELONIOUS ASSAULT OR TAMPERING WITH EVIDENCE.
 II. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION AND THEREFORE, THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT BY APPLYING THE MAXIMUM SENTENCE WITHOUT COMPLYING WITH THE SENTENCING STANDARDS OF THE OHIO REVISED CODE, THEREBY DENYING HIM HIS CONSTITUTIONAL RIGHTS.
 IV. THE DEFENDANT/APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT WHEN COUNSEL'S REPRESENTATIVE FELL BELOW A REASONABLE STANDARD AND THE DEFENDANT/APPELLANT WAS PREJUDICED THEREBY.
 I
In appellant's first assignment of error, he maintains the trial court erred in denying his motion for an acquittal pursuant to Crim.R. 29(A) at the close of the State's evidence and again at the close of all evidence. Specifically, appellant contends the evidence against him was insufficient to sustain a conviction of murder, felonious assault, or tampering with evidence. We disagree.
Criminal Rule 29 (A) governs a motion for acquittal. The rule states:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
In determining whether trial court improperly rejected a motion for acquittal, the relevant inquiry is whether, after viewing evidence in light most favorable to prosecution, any rational trier of fact could have found essential elements of the crime proven beyond a reasonable doubt.[6]
When a motion to acquit has been overruled by a trial court, the question for a reviewing court is whether, viewing the evidence in the light most favorable to State, reasonable minds can reach different conclusions as to whether each material element of the charged crime has been proved beyond a reasonable doubt.[7]
In the matter sub judice, appellant was charged with murder, felonious assault and tampering with evidence. Murder is defined in R.C. 2903.02. Section B of the statute controls herein, and states:
 (B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.
Felonious Assault is defined in R.C. 2903.11. The statute states, in relevant part:
 (A) No person shall knowingly do either of the following:
(1) Cause serious physical harm to another * * *;
 (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance.
"Serious physical harm to persons" means any of the following:
* * *
 (b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.[8]
Knowingly is defined in R.C 2901.22 as:
 (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
Finally, tampering with evidence is defined in R.C. 2921.12. The statute states, in relevant part:
 (A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
 (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;
"A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."[9]
 Murder and Felonious Assault Charges
Appellant first maintains the State presented insufficient evidence to sustain a conviction for murder. Appellant argues because appellant was charged with causing Drake's death as a proximate result of felonious assault, the State had to prove appellant knowingly caused serious physical harm to Drake which resulted in Drake's death.
Appellant admitted he went to Drake's apartment to act as a protector for his cousin, Jackson. He knew the reason he was there to collect Jackson's belongings was because Drake had engaged in sexual activity with two other individuals. Appellant knew drugs and alcohol had likely been used. While there was some dispute as to whether appellant knew he was taking a knife with him, appellant was aware he had the knife before the fight and scuffle ensued. As stated supra, Ball heard appellant tell Drake there would be "some cutting" if Jackson was not permitted to get her belongings. Further, as pointed out by appellee,, appellant admitted in his statement to Sgt. Boudreaux he lunged at Drake because Drake was coming toward him. Appellant admitted Drake was cut in the leg as a result of appellant's cutting him during this lunging action.
The State also presented evidence from the autopsy which revealed Drake also had an abdominal wound which had cut his small bowel and filled his abdominal cavity with blood. While the wound to his abdomen caused significant blood loss, the coroner concluded Drake's death was caused from the loss of blood from the leg wound.
When viewed in a light most favorable to the State of Ohio, this evidence could demonstrate appellant knowingly caused physical harm to Drake. Further, the evidence established these wounds caused Drake's death. We find no error in the trial court's decision to deny appellant's Crim.R. 29(A) with regard to the felonious assault charge, or the murder charge based upon felonious assault.
 Tampering with Evidence
As stated above, in order to prove tampering with evidence, the State had to prove appellant, knowing an official investigation was in progress, or imminent, attempted to alter, destroy, conceal, or remove anything from the crime scene with the purpose of impairing its value or availability as evidence. At trial, Smith testified appellant jumped into her car immediately after the incident telling her Drake was dead and the police were coming. In his statement to the police, appellant admitted he had disposed of the knife by throwing it into a sewer and had removed his shirt and had thrown it away. When viewed in a light most favorable to the State, this evidence demonstrates all elements of the crime of tampering with evidence. Accordingly, the trial court did not err in denying appellant's Crim.R. 29(A) motion for acquittal.
Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant maintains the evidence was insufficient to sustain a conviction and further that the verdict was against the manifest weight of the evidence. We disagree.
In State v. Jenks[10], the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 Jenks, supra, at paragraph two of the syllabus.
When applying the aforementioned standard of review to the case subjudice, based upon the facts noted supra, and the same reasons set forth in our analysis of appellant's first assignment of error, we do not find, as a matter of law, appellant's convictions were based upon insufficient evidence.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment.[11] Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact.[12]
Involuntary manslaughter is defined in R.C. 2903.04. The relevant section states: * * *
 (B) No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree * * *
Herein, the misdemeanor offense at issue is assault as defined in R.C. 2903.13:
* * *
 (B) No person shall recklessly cause serious physical harm to another * * *.
The mental state of reckless is defined in R.C. 2901.22 (C):
* * *
 (C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
Specifically, appellant contends it was inconsistent for the jury to find him not guilty of murder (based upon felonious assault) guilty of involuntary manslaughter (based upon the misdemeanor assault) and yet at the same time find him guilty of felonious assault. Appellant contends these inconsistencies demonstrate the jury lost its way when weighing the evidence. Essentially, appellant maintains the fact the jury found him guilty of both felonious assault and involuntary manslaughter is a clear indication the jury lost its way, and should have found him guilty only of negligent homicide. We disagree.
Although the jury's convictions for involuntary manslaughter and felonious assault appear to be somewhat inconsistent, we do not find the jury clearly lost its way in weighing the evidence. The jury could have found appellant delivered the fatal leg wound during a misdemeanor assault predicated on reckless conduct. The jury could also have found felonious assault based upon the knife wound to Drake's abdomen, an injury consistent with an intentional stabbing. Because this is a reasonable view of the evidence, we find the jury did not lose its way in weighing the evidence.
Assuming, arguendo, the jury lost its way in finding appellant guilty of felonious assault and involuntary manslaughter, appellant cannot demonstrate prejudice. At the sentencing hearing, the trial court indicated the jury's verdict was inconsistent in that it found appellant guilty of both felonious assault and involuntary manslaughter. In order to remedy that situation, the trial court merged the two counts and sentenced appellant only on the involuntary manslaughter charge. Accordingly, appellant suffered no prejudice from the jury's guilty verdict on the higher degree felonious assault charge.
Appellant also argues the jury must have lost its way in finding appellant guilty of involuntary manslaughter as opposed to negligent homicide. We disagree.
Negligent homicide is defined in R.C. 2903.05(A). The statute provides, in relevant part:
 Negligent homicide is negligently causing the death of another by means of a deadly weapon or dangerous ordinance.
The trial court instructed the jury a "person acts negligently when, because of the substantial laps from due care, he fails to perceive or to avoid a risk that his conduct may cause a certain result or be of a certain nature * * * the person fails to receive or to avoid a risk that such circumstances may exist. Due care is that amount of care which a reasonably prudent person is a custom to use under similar circumstances."[13]
Appellant maintains the facts of the present case support only negligent homicide. We disagree with this assessment. As stated above in our Statement of the Case and Facts and in our analysis of appellant's first assignment of error, we cannot find the jury lost its way in finding appellant guilty of involuntary manslaughter based upon the underlying misdemeanor crime of assault.
Appellant also argues his cooperation with the police after his arrest negates his culpability for tampering with the evidence. We disagree. The crime was committed prior to appellant's cooperation. For the same reasons stated in our analysis of appellant's first assignment of error, we find there was sufficient evidence, if believed, for the jury to find appellant guilty of tampering with evidence. Our review of the evidence indicates the jury did not lose its way in concluding appellant was guilty of tampering with evidence.
Appellant's second assignment of error is overruled.
 III
In appellant's third assignment of error, he maintains the trial court erred in applying the maximum sentence without complying with the statutory requirements for maximum sentences. We agree.
R.C. 2929.14(C) permits the trial court to impose the maximum prison term upon offenders committing the worst forms of the offense and upon offenders who impose the greatest likelihood of committing future crimes. Pursuant to R.C. 2953.08(G), our standard of review on this issue is clear and convincing evidence. R.C. 2929.14 governs the imposition of a maximum prison term. The statute states, in relevant part:
 (C) Except as provided in division (G) of this section or in Chapter 2925 of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.
While a recitation of the statutory criteria alone may be enough to justify more than the minimum sentence, it is not enough to justify the imposition of the maximum sentence. The trial court also must provide its reasons. As stated in R.C. 2929.19(B)(2)(d):
 The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
* * *
 (d) If the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term * * *
Thus, a trial court has discretion to impose a maximum sentence if it determines one of the factors listed in R.C. 2929.14(C) exists, and it explains its reasons for imposing a maximum sentence as required by R.C.2929.19(B)(2)(d). Accordingly, we must turn to the sentencing hearing to determine if the trial court stated its reasons for imposing the maximum sentence. If the trial court fails to provide such reasons, either orally or in the sentencing entry, the matter must be remanded for resentencing.[14]
At the April 24, 2000 sentencing hearing, the trial made the following statements:
 Thank you, the record should reflect that the Court has reviewed the statements given today and any victim impact statements that were submitted, the Defendant's records and is prepared for sentencing today. * * *[15]
* * *
 However, the law does require that under 2914(B) that the court can impose the longest term under 2929.14(C) if the Defendant committed the worst form of the offense, and I find that in fact the Defendant has committed the worst form of the offense under the facts that I have read.[16]
We find the trial court did not state its reasons for imposing the maximum sentence pursuant to R.C. 2929.19(B)(2)(d). Accordingly, we vacate appellant's sentence and remand this matter to the trial court to resentence appellant in accordance with the aforementioned law.
Appellant's third assignment of error is sustained.
 IV
In his fourth assignment of error, appellant maintains he was denied effective assistance of counsel because his trial counsel failed to ask the court to merge the murder and felonious counts before the case was presented to the jury. Appellant also maintains his counsel failed to object to the trial court's imposition of the maximum sentence for involuntary manslaughter. We address appellant's contentions in turn.
The standard of review of an ineffective assistance of counsel claim is well-established. Pursuant to Strickland v. Washington,[17] in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different.[18]
In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential.[19] Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance.[20]
In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.[21] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[22]
Appellant first contends his trial counsel failed to request merger of the murder and felonious assault counts before the case was presented to the jury. At the outset, we note appellant's argument is unsupported by any relevant case or statutory law. We are left to conclude appellant actually intended one of two separate arguments. First, it is possible appellant argues the trial court was required to dismiss one of the indicted counts before instructing the jury. This argument has been addressed in our analysis of appellant's first assignment of error wherein appellant argued the trial court erred in denying his motion for a Crim.R. 29 at the close of the State's case and the close of all evidence.
It is also possible appellant argues the cases should be merged before sentencing because they are allied offenses of similar import. We would also disagree with this contention.
R.C. 2941.25 provides:
Multiple Counts
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
The applicable test for deciding whether crimes are allied offenses of similar import was set forth in State v. Blankenship (1988),38 Ohio St.3d 116, 117:
 If the elements of the crimes "`correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import.'" If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted.[23]
Until recently, we used the two-part test announced in Newark v.Vazirani (1990), 48 Ohio St.3d 81, to analyze claims involving allied offenses of similar import. That test required an analysis of the relevant offenses in light of the specific facts of the case.
However, in State v. Rance (1999), 85 Ohio St.3d 632, the Ohio Supreme Court clarified the test to be applied when reviewing claims involving allied offenses of similar import, specifically overruling Vazirani,supra:
 Under an R.C. 2941.25(A) analysis, the statutorily defined elements of offenses that are claimed to be of similar import are compared in the abstract. (Newark v. Vazirani [1990], 48 Ohio St.3d 81, 549 N.E.2d 520, overruled.) Syllabus par. 1.
Accordingly, we must compare the elements of the offenses in the abstract.
The elements of felonious assault and murder have been set forth,supra. In comparing the elements of the two crimes in the abstract, we cannot find the elements of murder correspond to the elements of felonious assault to such a degree that the commission of murder requires the commission of felonious assault, or vice versa. Accordingly, we find the offenses are not allied offenses of similar import. Finally, we note appellant provides us with no law, and we find no precedent to suggest the trial court was required to "merge" the murder and felonious assault counts before instructing the jury.
Because we find no reason the trial court should have dismissed one of the counts before instructing the jury, and we find the offenses were not allied offenses of similar import, we find appellant's argument his trial counsel was ineffective to be without merit. An attorney is not ineffective for failing to raise an objection which would have been denied.[24]
Finally, appellant contends his trial counsel failed to object to the trial court's imposition of the maximum sentence for involuntary manslaughter. In light of our disposition of appellant's third assignment of error, we find this argument to be moot.
The May 1, 2001 Judgment Entry of the Stark County Court of Common Pleas is affirmed in part and vacated and remanded in part. While we affirm the convictions, we vacate appellant's sentence and remand this matter to the trial court for resentencing in accordance with law and this opinion.
By: HOFFMAN, P.J. GWIN, J. and FARMER, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the May 1, 2001 Judgment Entry of the Stark County Court of Common Pleas is affirmed in part as to appellant's convictions, but vacated as to appellant's sentence. This matter is remanded to the trial court for resentencing in accordance with law and this opinion. Costs assessed to appellant.
[1] Tr. at 207-217.
[2] Tr., Vol. II. at 44.
[3] Tr., Vol. II at 49.
[4] Tr., Vol. II at 51.
[5] Tr., Vol. II at 55.
[6] State v. Williams (1996) 74 Ohio St.3d 569, certiorari denied117 S.Ct. 109, 136 L.Ed.2d 62.
[7] State v. Bay (1998) 130 Ohio App.3d 772.
[8] R.C. 2901.01(A)(5).
[9] R.C. 2901.22(A).
[10] State v. Jenks (1981), 61 Ohio St.3d 259.
[11] State v. Thompkins (1997), 78 Ohio St.3d 380, 387 citing State v.Martin (1983), 20 Ohio App.3d 172, 175.
[12] State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
[13] Tr., Vol. II. 115.
[14] State v. Norman (June 4, 2001), Muskingum App. 2000-0035, unreported; State v. Gibbons, (March 30, 2000), Stark App. No. 1998CA00158, unreported.
[15] Sentencing Transcript at p. 20.
[16] Sentencing Transcript, p. 35.
[17] Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 673.
[18] State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373; Statev. Combs, supra.
[19] Bradley, 42 Ohio St.3d at 142.
[20] Id.
[21] Bradley, supra at syllabus paragraph three.
[22] Id.
[23] State v. Rance (1999), 85 Ohio St.3d 632, 636, quoting State b.Blankenship, supra, citations omitted.
[24] State v. Gibson (1980), 69 Ohio App.2d 91, 95.